Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 5354 | DATE | 4/9/2004 |
| CASE TITLE | Aitken vs. Halter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for judgment in plaintiff's favor (R. 12-1) is denied, and Defendant's motion for summary judgment (R. 10-1) is granted. Status hearing set for 5/6/04 is stricken. Any other pending dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | APR 12 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 20 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH✓ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
APR 1 2 2004

APR 1 2 2004

| | |
|---|---|
| JAMES F. AITKEN, | ) |
| Plaintiff, | ) |
| v. | ) No. 03 C 5354 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

*Pro se* plaintiff James F. Aitken has moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, to reverse or remand the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). The Commissioner's final decision denied Aitken's claim for Disability Insurance Benefits ("DIB").[1] under Title XVI of the Social Security Act (the "Act"). 42 U.S.C. § 1381(a). Defendant has filed a Cross-Motion for summary judgment, requesting that the Court affirm the Commissioner's final decision. For the reasons set forth below, the Court affirms the Commissioner's final decision.

**PROCEDURAL BACKGROUND**

On April 13, 1998, Aitken filed an application for DIB, alleging that he became disabled

---

[1] Disability Insurance Benefits provide a minimum level of benefits to persons under age 65 who: a) have a disability as defined in 20 C.F.R. § 404.1505; and b) qualify as fully insured by having sufficient Social Security earnings as provided in 20 C.F.R. § 404.130. *See* 20 C.F.R. § 404.320(b).

1

20

on November 23, 1985 after his foot surgery. The Commissioner denied Aikten's DIB application on May 22, 1998, on the basis that he was not disabled by the quarter last insured.

On June 27, 2000, Aitken filed another application for DIB, again alleging that he became disabled on November 23, 1985. The Commission determined that certain evidence had not been considered in connection with Aitken's April 12, 1998 application, and accordingly reopened the May 22, 1998 determination. (R. 8-1, Transcript of Record of Proceedings, at 10-11, 66.) On March 15, 2002, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 72.) On November 1, 2002, Aitken had a hearing before the ALJ. Aitken was represented by counsel at the hearing. Aitken's attorney requested a continuance to secure additional evidence, thus the ALJ held a supplemental hearing on December 11, 2002.

On April 22, 2003, the ALJ denied Plaintiff's application for DIB. (*Id.* at 7-14.) On May 14, 2003, Aitken filed a request for review of the ALJ's decision on the basis that the decision was contrary to the evidence. (*Id.* at 6.) On June 20, 2003, the Appeals Council denied Aitken's request for review of the ALJ's April 22, 2003 decision, and the ALJ's decision became the final decision of the Commissioner. (*Id.* at 4-5.)

## FACTUAL BACKGROUND

### I. Plaintiff Aitken

Plaintiff was born on August 24, 1936, and was 66 at the time of his hearing. (*Id.* at 29-30.) He obtained a masters degree in history in 1969 from the University of Americas. (*Id.* at 31.) Plaintiff was last gainfully employed in approximately October 1985 when he worked at Consolidated Freightways as a dock worker. (*Id.* at 23.) At that time, he performed manual labor for Consolidated Freightways. (*Id.* at 23.) In November 1985, Aitken had foot surgery to correct

hammer toes. (*Id.* at 23.) He could not return to his dock worker position after the surgery. (*Id.* at 24.)

Since his foot surgery, Plaintiff has worked approximately five to ten days as a substitute teacher in both high school and grade school. (*Id.* at 32.) The last time he worked as a substitute teacher was in 1993. (*Id.* at 32.) He is registered to substitute teach in both LaSalle and Vero Counties, and is listed to substitute through 2006. (*Id.* at 32-33.) He also has applied for jobs at the Illinois Historical Society, Ace Hardware, Wal-Mart, and Mendards, but has not been hired for numerous reasons. (*Id.* at 25, 26 & 45.)

Aitken is the owner, president, vice-president and treasurer of Aitken, Incorporated, a bar and restaurant in Justice, Illinois. (*Id.* at 34-35 & 132.) During his testimony, Aitken claimed, however, that he did not work for the Aitken, Incorporated. He testified that he washed dishes at Aitken one day, but "got tired of being slapped around" by his partner so he did not go back. (*Id.* at 36.)

During his testimony before the ALJ, Plaintiff told the ALJ that he has used a cane since 1985 when he had foot surgery since his feet hurt. He said, however, that he did not use the cane all the time because the pain "comes and goes." (*Id.* at 41.) He generally uses the cane when he is on the floor because it is difficult for him to get up from the floor without it. (*Id.* at 41.)

Aitken testified that he used prescription pain killers in connection with his foot and knee surgeries. Those were the primary two periods when he took such medication. (*Id.* at 39.) Otherwise, Aitken just took aspirin for his pain. (*Id.*)

Aitken lives by himself. (*Id.* at 44.) He drives, vacuums his home once a week, cooks, mows his law during the summer, takes out his trash, and washes his dishes. (*Id.* at 44-45.) He

3

also reads a lot. (*Id.* at 44.)

## II. Medical Evidence Before Plaintiff's Date Last Insured

On November 4, 1985, Dr. Michael Wessels, a podiatrist, performed surgery on Plaintiff to correct a hammer toe deformity on his third and fourth digits bilaterally. (*Id.* at 180.) Plaintiff tolerated the procedure well. (*Id.*.)

From May 5 through June 20, 1986, Plaintiff underwent a medical evaluation at the Mayo Clinic. (*Id.* at 156-59.) Dr. James T.C. Li conducted the examination and noted the "physical examination was within normal limits." (*Id.* at 156.) The Mayo Clinic diagnosed Plaintiff with paranoid disorder, honeybee sting sensitivity, and back pain. (*Id.*)

While at the Mayo Clinic, Dr. Peterson of the Orthopedic Department, evaluated Plaintiff for back pain. Dr. Peterson indicated that Plaintiff's back pain "was secondary to mild degenerative arthritis." (*Id.*) Dr. Auger of the Neurology Department further evaluated Plaintiff for the back pain and noted only mild limitation of the range of motion of Plaintiff's cervical spine. "No neurologic disease was noted." (*Id.*) Dr. R.R. Swatell of the Physical Medicine and Rehabilitation Department also evaluated Plaintiff and outlined a comprehensive physical therapy program for Plaintiff. (*Id.*) There is no evidence that Plaintiff participated in such a program.

Plaintiff Aitken testified that he had knee surgery approximately three years before his December 2002 hearing before the ALJ. (*Id.* at 38.) There is no record of such surgery. (*Id.* at 12.)

In addition, Dr. J.W. Richardson of the Psychiatry Department at the Mayo Clinic saw Mr. Aitken. Dr. Richardson stated that he believed Mr. Aitken had a paranoid disorder, probably

4

paranoid schizophrenia. (*Id.* at 156.) Although Dr. Richardson recommended that Aitken seek psychiatric help, Aitken refused. (*Id.* at 156.)

On August 20, 1986, Plaintiff sought the care of Dr. Donald W. Piller, a chiropractor, to treat his back pain. (*Id.* at 164-66.) Dr. Piller noted that Aikten's general health was good, but he complained of chronic lower back pain. (*Id.* at 164.) Atiken said that he started seeing Dr. Piller in approximately 1983 because Consolidated Freight sent Aitken to him. (*Id.* at 43.) At the time of the hearing, Aitken testified that Dr. Piller still treats him for his back pain. (*Id.* at 43.) He further testified that he sees Dr. Piller for treatment approximately two times a year. (*Id.* at 27.) Dr. Piller noted that Aitken was not taking pain medication at the time, but had taken prescription pain pills for his back pain from "time to time." (*Id.*) Dr. Pillner's tests indicated that the range of motion in Aitken's cervical spine was somewhat limited, but the range of motion in his dorso-lumbar spine was normal. (*Id.* at 165.)

### III. Medical Evidence After Plaintiff's Date Last Insured

On November 14, 2002, Aitken saw Dr. Michael Wessels of the KSB Medical Group in Dixon, Illinois. (*Id.* at 182.) Dr. Wessels noted that Plaintiff "has full range of motion of all major foot joints without pain. Muscle strength and tone are normal. There is some slight residual contracture of the lesser digits, but they appear within normal limits." (*Id.* at 183.) He further noted that Aitken's deep tendon reflexes were "diminished bilaterally," and his vibratory sensation was diminished from the mid tarsus distally. (*Id.*) Sharp dull discrimination was diminished from the ankle distally. (*Id.*) Aitken could not feel the monofilament wire from the mid tarsus area distally, thus his Sims-Weinstein monofilament test was abnormal. (*Id.*).

Dr. Wessels opined that:

5

> I don't feel that his foot surgery in the past is contributing to his symptoms now since he relates no history of diabetes and/or alcoholism. I think his peripheral neuropathy is probably related to previous lower back injury. He probably should be evaluated by a neurologist.
>
> I do feel, however, that with this peripheral neuropathy, he certainly should be eligible for social security benefits. That is in the context of his other conditions like lower back injury and previous orthopedic conditions of his knees.

(*Id.* at 183.)

### III. The ALJ's Rulings

On April 22, 2003, the ALJ issued his opinion, concluding that Aitken was not disabled at any time through his date last insured, March 31, 1991. The ALJ found that Aitken had retained the residual functional capacity to perform light exertional work through March 31, 1991. He further found, after evaluating Aitken's credibility, that Aitken's subjective complaints and allegations concerning the severity of his impairments were not reasonably consistent with the objective medical and other evidence of the record. Although Aitken was unable to perform his past relevant work as a construction laborer or dock worker, the ALJ concluded that his impairments did not preclude him from performing past relevant work as a substitute teacher or owner/officer of a bar or restaurant business.

## LEGAL STANDARDS

### I. Standard of Review

The Court's review of the Commissioner's decision denying Aitken's DIB is governed by 42 U.S.C. § 405(g). Section 405(g) provides that the findings of the ALJ are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v.*

*Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quotations omitted). "Substantial evidence may be less than the weight of the evidence ... and more than a scintilla." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citations and quotations omitted). Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

The Court may not decide facts anew, reweigh the evidence, resolve conflicts in evidence, or decide questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Instead, the Court's review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992).

**II.     Disability Standard**

A person is disabled for purposes of DIB if there is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be disabled, an individual must establish that he cannot perform his prior work given his physical or mental limitations, and he further cannot participate in any gainful employment that exists in the national economy considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine if a claimant is disabled pursuant to Section 423(d)(1)(A), the Commissioner has created a five-step, sequential analysis for evaluating claims. 20 C.F.R. §

404.1520. Under the five step analysis, the claimant must show that: (1) he is not presently employed in a substantial gainful activity; (2) his impairment is severe; (3) his impairment meets or is equal to an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he has insufficient residual functioning capacity ("RFC") to perform his past relevant work; and (5) given his age, education, and past relevant work experience, he is unable to perform any other work within the national and local economy. 20 C.F.R. § 404.1520(a)(4)(i)- (v). *See Scheck*, 357 F.3d at 700; 20 C.F.R. § 416.920. A person's RFC is what he can do despite any physical and mental limitations. 20 C.F.R. § 404.1545(a)(1).

If the ALJ makes a conclusive finding at any step in this sequential analysis "that the claimant either is or is not disabled, then she need not progress to the next step." *Young v. Barnhart*, __ F.3d __, 2004 WL 692167, *4 (7th Cir. Apr. 2, 2004); 20 C.F.R. § 404.1520(a)(4). The burden of proof remains on the claimant through step four of the analysis. At step five, the burden shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

In order to be entitled to DIB, a claimant must demonstrate that he was disabled on or before his date last insured. 42 U.S.C. § 423(a)(A), 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.131. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997). Here, it is undisputed that Aitken's date last insured was March 31, 1991. (R. 8-1, Transcript of Record of Proceedings, at 11.)

## ANALYSIS

Plaintiff claims that the ALJ did not have substantial evidence to support his decision. The Court disagrees.

I.    **The Five Step Analysis**

The ALJ correctly applied the Commissioner's five step sequential analysis in reaching his conclusion in this case. In doing so, the ALJ assessed Aitken's credibility and the credibility of his subjective complaints. (*Id.* at 12.) The ALJ's credibility determinations are "entitled to special deference." *Scheck*, 357 F.3d at 703 (citations omitted). Indeed, the Court will not disturb an ALJ's credibility determination unless "it is patently wrong" in light of the entire record. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995).

It is undisputed that Aitken satisfies step one. The record supports that he did not engage in substantial gainful activity from November 23, 1985 when he had his foot surgery through March 31, 1991, his date last insured.

With respect to step two, the ALJ found that Aitken had no medically determinable psychological impairment. Aitken does not appear to contest this finding. The record also demonstrates while that Dr. Richardson at the Mayo clinic suggested that Aitken suffered from a paranoid disorder in 1986, Aitken refused treatment. *See Griffith v. Callahan*, 138 F.3d 1150, 1155 (7th Cir. 1998) (failure to initiate treatment with a mental health specialist was factor supporting that mental impairments not disabling). Furthermore, the record is devoid of any other evidence that Plaintiff suffered from a psychological impairment. Plaintiff does not even make such an argument.

The ALJ found objective medical evidence of severe impairment consisting of the residual effects of a bank injury and bilateral foot surgery. (R. 8-1, Transcript of Record of Proceedings at 11.) Therefore, the ALJ proceeded to step three of the analysis and concluded that Aitken's impairments did not meet or equal a Listing of Impairments ("Listing") found in

Appendix 1, Subpart P, Regulations No. 4. (*Id.* at 11.) The ALJ reasoned that the record did not contain any evidence that Plaintiff was unable to ambulate effectively for at least twelve consecutive months or any evidence that Plaintiff's nerve root or spinal cord were compromised. Nothing in the record suggests otherwise.

Regarding step four, the ALJ found that Aitken retained the residual functional capacity to perform light exertional work through March 31, 1991, his date last insured. The ALJ reached this conclusion based on the objective medical evidence of record as well as his assessment of the credibility of Aitken's complaints. There is substantial evidence to support this conclusion.

### A.     Absence of Objective Medical Evidence

There is an absence of objective medical evidence in the record to support Atiken's claim that he was disabled and has not been able to work as of his date late insured. After his foot surgery, a physical examination in May and June of 1986 was within normal limits. (*Id.* at 156-57.) Although the 1986 report showed that Aitken had mild limitation of motion in the cervical spine, he had no neurologic deficits. X-rays of Plaintiff's thoracic spine were normal. The Mayo Clinic also suggested that Aitken's back pan was due to degenerative arthritis which was only mild in nature.

Plaintiff testified that he saw a chiropractor, but the records reflect that he saw Dr. Piller, a chiropractor, from July 1983 to April 1984, and then again in August 1986. The next record of chiropractic treatment is not until October 2000. Even Aitken testified that he only sees Dr. Piller approximately two times a year.

Plaintiff did present one letter opinion from Dr. Wessels opining that Plaintiff had "peripheral neuropathy" and certainly should be eligible for social security benefits." (*Id.* at

10

182.) That letter, however, was rendered approximately eleven years after Plaintiff's date of last insured. Dr. Wessels did not opine that Plaintiff was disabled as of his date of last insured. It is also inconsistent with the 1986 examination conducted by the Mayo Clinic concluding that Plaintiff's neurological examination was normal. Accordingly, the ALJ justifiably did not conclude that Dr. Wessels' opinion supported a disability determination as of March 31, 1991. *See Powers*, 207 at 435 (ALJ "within his discretion to reject [medical] opinion as conclusory and unsupported by the record.").

Furthermore, the Wessels' letter supports the ALJ's determination that Aitken was not disabled from his 1985 foot surgery. Even Dr. Wessels opined that he did not "feel that his foot surgery in the past is contributing to his symptoms now."

### B. Plaintiff's Credibility

As the Seventh Circuit recently noted, "[t]he absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." *Scheck*, 357 F.3d at 703 (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984)). The ALJ also must consider the following: "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Id.* Here, the ALJ reasonably considered these other factors and rejected Plaintiff's claim of disability.

The ALJ noted that Aitken drives, attends church, cooks, mows his law, does laundry and eats in restaurants. Aitken also testified that he could sit behind a desk to teach. (R. 8-1, Transcript of Record of Proceedings, at 34.) The ALJ further noted that Aitken had applied for

11

jobs, including one as a substitute teacher. When the ALJ asked Aitken if he could teach if he received a call to do so, Aitken responded "well, I would try, yes." (*Id.* at 34.) Aitken told the ALJ, "I use to teach Spanish, do you want me to teach Spanish again, find me a job and I'll teach." (*Id.* at 47.)

Aitken also is the owner, president, vice-president and treasurer of Aitken, Incorporated, a bar and restaurant in Justice, Illinois. (*Id.* at 34-35, 132.) Aitken claimed, however, that he did not work for the company. He testified that he washed dishes at Aitken one day, but "got tired of being slapped around" by his partner so he did not go back. (*Id.* at 36)

As to Aitken's statements regarding his pain, he testified that he has pain that comes and goes. (*Id.* at 41.) Furthermore, from 1985 to 2002, Aitken admitted that he did not take painkillers continuously or even intermittently. (*Id.* at 38-39.) He only took them when he had surgery in 1985 and when he had his subsequent knee surgery. (*Id.* at 39.) He did take aspirin at times. (*Id.*) Viewing the evidence in its entirety, the ALJ's credibility determination was not "patently wrong." Moreover, given that the ALJ properly considered the *Polaski* factors outlined above, deference to his credibility determination is "especially proper." *Schenck*, 357 F.3d at 703.

The Seventh Circuit's recent opinion in *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004) does not provide otherwise. In *Carradine*, the Seventh Circuit reversed the ALJ's determination of no disability, finding that the ALJ's credibility determination regarding the claimant's subjective pain was based on "serious errors in reasoning." Such errors in reasoning do not exist in this case.

C. **Performing Other Jobs**

12

Where a claimant cannot perform past relevant work, the burden of proof shifts to the Commissioner to identify other jobs that the claimant can perform under step five of the analysis. 20 C.F.R. § 404.1520(f). Here, the Commissioner properly referred to the Medical Vocational guidelines (the "grid") to identify other jobs involving light exertional work that Plaintiff could perform through March 31, 1999 in the national economy. *See Heckler v. Campbell,* 461 U.S. 458, 462-65 (1983). The Commissioner also noted that Plaintiff could perform past relevant work such as teaching and working at a bar.

## CONCLUSION

There is substantial evidence in the record to support the ALJ's conclusion that Aitken was not disabled because he could perform a limited range of light work as of his date last insured. Accordingly, the Commission's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

Dated: April 9, 2004

ENTERED

AMY J. ST. EVE
United States District Judge